| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1 :05CR55 HEA |
| | ) | |
| GREGORY ALLEN SPARKMAN, | ) | |
| | ) | |
| Defendant, | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on defendant's Motion for Judgment of

Acquittal N.O.V. or in the Alternative for a New Trial. Defendant has filed a brief

in support of his motion; the government has not responded to the Motion. For the

reasons set forth below, the motion is denied.

## Applicable Standards

Rule 29 of the Federal Rules of Criminal Procedure provides that if the jury

has returned a guilty verdict, the court may set aside the verdict and enter an

acquittal. Fed.R.Crim.P. 29(c)(2). However, the Court "has very limited latitude in

ruling upon a motion for judgment of acquittal." *United States v. Baker,* 367 F.3d

790, 797 (8th Cir.2004). The Court cannot weigh the evidence or assess the

credibility of witnesses. *Id.* Likewise, if the evidence rationally supports two

conflicting hypotheses, the Court will not disturb the conviction. *Ortega v. United*

*States,* 270 F.3d 540, 544 (8th Cir.2001) (citations omitted). Thus, the Court may grant a judgment of acquittal "only where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged." *Baker,* 367 F.3d at 797; *United States v. Armstrong,* 253 F.3d 335, 336 (8th Cir.2001). As the Eighth Circuit Court of Appeals has explained, "A motion for a judgment of acquittal should be *denied* where the evidence, viewed in the light most favorable to the government, is such that a reasonable jury could have found each of the essential elements of the crime beyond a reasonable doubt." *United States v. Moyer,* 182 F.3d 1018, 1021 (8th Cir. 1999) (emphasis added) (citing *United States v. Hood,* 51 F.3d 128, 129 (8th Cir. 1995), and *United States v. Huntsman,* 959 F.2d 1429, 1436-37 (8th Cir. 1992), *cert. denied,* 506 U.S. 870, (1992)), *cert. denied,* 530 U.S. 1203 (2000). To put it another way, " '[a] motion for judgment of acquittal should only be *granted* where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any essential elements of the crime charged.'" *United States v. Pardue,* 983 F.2d 843, 847 (8th Cir. 1993) (quoting *United States v. Mundt,* 846 F.2d 1157, 1158 (8th Cir. 1988), with citation omitted and emphasis added), *cert. denied,* 509 U.S. 925 (1993); *accord United States v.*

*Lopez,* 384 F.3d 937, 943 (8th Cir. 2004) ("'In reviewing a challenge to the sufficiency of the evidence, we may reverse a jury's verdict only where a reasonable fact-finder must have harbored reasonable doubt relating to the government's proof on at least one of the essential elements of the offense.' *United States v. Jensen,* 141 F.3d 830, 833 (8th Cir. 1998).") The court must "give the jury's verdict the benefit of reasonable inferences gathered from the record." *Lopez,* 384 F.3d at 943. Thus, in either the trial court or the appellate court, the standard is the same.

The test is whether "a reasonable fact finder could have found guilt beyond a reasonable doubt." *United States v. Garrett,* 948 F.2d 474, 476 (8th Cir.1991) (citation omitted). Under this standard, the district court has "very limited latitude." *United States v. Jewell,* 893 F.2d 193, 194 (8th Cir.1990). In deciding a motion for judgment of acquittal, the court can neither weigh the evidence nor assess the credibility of the witnesses. *Burks v. United States,* 437 U.S. 1, 16 (1978). *Pardue,* 983 F.2d at 847.

Rule 33 of the Federal Rules of Criminal Procedure provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial *if the interest of justice so requires.*" Fed.R.Crim.P. 33(a) (emphasis added). When ruling on a motion for a new trial under Rule 33, the Court has broader discretion than on a motion for judgment of acquittal under Rule 29. *United States v. Campos,*

306 F.3d 577, 579 (8th Cir.2002).  It therefore may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *White v. Pence,* 961 F.2d 776, 780 (8th Cir.1992).  Nevertheless, the Court's discretion is not unfettered.  Motions for a new trial based on the weight of the evidence are generally disfavored. *Campos,* 306 F.3d at 579.  Thus, the Court must exercise its authority under Rule 33 "sparingly and with caution." *Id.* (quoting *United States v. Lincoln,* 630 F.2d 1313, 1319 (8th Cir.1980)).  See also, *United States v. Dodd,* 391 F.3d 930, 934 (8th Cir.2004)   Unless the Court ultimately determines that a miscarriage of justice will occur, the jury's verdict must stand. *Id.*

> "The decision to grant or deny a motion for a new trial based upon the weight of the evidence is within the sound discretion of the trial court." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002).  In making its decision, the district court "need not view the evidence in the light most favorable to the government, but may instead weigh the evidence and evaluate for itself the credibility of the witnesses." *United States v. Lacey,* 219 F.3d 779, 783-84 (8th Cir.2000).  The district court need not grant a motion for a new trial unless the evidence "weighs heavily enough against the verdict that a miscarriage of justice may have occurred."  *Id.* at 783 (citation omitted).

*United States v. Vesey*, 395 F.3d 861, 863 (8th Cir. 2005).

With these standards in mind, the court now pays visit to the alleged errors that defendant asserts should entitle him to judgment of acquittal or a new trial.

## Discussion

Initially, defendant renews and reincorporates by reference each and every one of his prior objections, motions and arguments supporting them. At the time the objections and motions were made, the Court entered its rulings on the record. Those rulings will not be repeated herein.

Specifically, defendant argues the following:

> **The government has failed to prove each essential element of the charges beyond a reasonable doubt. Reasonable jurors could not rationally and logically believe that defendant's guilt had been proven beyond a reasonable doubt. (Citation omitted). The government's case rests on the testimony of a single witness, Scott Smith, whose credibility and recall would be disbelieved by any reasonable juror.**

Government witness Scott Smith testified in support of the government's case in chief. Defendant cross-examined Smith extensively on the testimony adduced during direct examination. Credibility determinations are solely within the purview of the jury, the trier of fact. Whether a witness is credible is a decision which neither this Court nor the defendant can make. The jury in this matter was selected after a proper voir dire and the conclusions as to witness credibility were based on

the jury's assessment of the evidence in accordance with the instructions. While there may have been inconsistencies in Smith's testimony, the jury clearly heard those inconsistencies, and considered the testimony along with all the other evidence presented at trial. Smith was not the government's sole witness, nor was Smith's testimony the only testimony upon which the jury was required to base its decision. Defendant's bold and unabashed statement that no reasonable rational juror could find defendant guilty beyond a reasonable doubt is purely an argument by defendant. Defendant points to nothing, other than his own belief, to support his contention that _no_ rational juror could conclude his guilt beyond a reasonable doubt. It is clear to this Court that each member of the jury adhered to the oath to follow the law as given and determine the facts based on the evidence. Based on the entire record, the Court remains unpersuaded by defendant's argument that no rational or logical juror could have determined defendant's guilt beyond a reasonable doubt.

> **Defendant was deprived of due process, the right to effective assistance of counsel, his right to present a defense, and his right to compel the attendance of witnesses, in violation of the Fifth and Sixth Amendments to the U.S. Constitution, in that the Court erroneously and improperly refused to enforce a writ of habeas corpus ad testificandum to secure the attendance of one James Furr, claiming it lacked the authority to compel the attendance of Furr because the Bureau of Prisons (BOP) was beyond the**

**jurisdiction and authority of the Court.**[1]

Defendant presents a very thorough analysis of the applicable law regarding notice, confrontation and compulsory process. The Court has no disagreement with defendant's discussion of the applicable law and defendant's rights thereunder. Rather, the Court does strongly disagree with defendant's application of this law *vis a vis* his trial. While defendant argues that he was "duped into complicity" by statements made by the government, the record belies defendant's position. While attendance of Furr was admittedly discussed, including that the government would attempt to assist defendant, the record is completely devoid of any promises and/or assurances that the government would unilaterally secure Furr's attendance on behalf of defendant. That having been said, noone disputes that the government did in fact assist defendant with regard to Furr by preparing the writ of *habeas corpus ad testificandum* in an effort to have him brought to trial. Furthermore, defendant's argument that he was "duped into complicity" is deflated when one considers his witness list. While the government listed Furr as a "may call" witness, Furr is not

---

[1] Although defendant, in his Motion states that one basis for his motion is that he was denied effective assistance of counsel, in his memorandum in support of the motion, defendant only argues that the absence of Furr was in violation of his Fifth and Sixth Amendment Rights to due process, confrontation and compulsory process. As such, the Court will likewise address the issue in this regard. Defendant presents nothing to support his claim in his motion that he was denied effective assistance of counsel.

even listed on defendant's witness list. Notwithstanding that it was not the government's obligation to secure defendant's witnesses for trial, even assuming that the government undertook this role, it is beyond comprehension that the government should know that a witness who is not named on defendant's list was still needed for trial.

Likewise, defendant's argument regarding Court error and abuse of discretion is clearly misguided. Defendant argues that the Court misunderstood its authority to compel the witness. Quite the contrary, the Court is well aware of its inherent authority to issue writs and compel the attendance of witnesses. Defendant fails to understand the Court's articulated rulings with regard to the processes of transportation of witnesses by the Bureau of Prisons and the Marshal's Service. As an accommodation, the Court inquired as to the ability of the Marshal's Service to perform the task of transporting Furr from the maximum security facility in Florence, Colorado. The Marshal's Service advised the Court that it was not within the realm of feasibility to secure Furr in the time anticipated. Having this explanation, the Court fully set forth its position on the record: defendant's trial was set; the jury was present and waiting; the presence of Furr at that time was not feasible. Moreover, as the Court stated on the record, Furr's testimony was not entirely exculpatory in that it was believed that he would testify that Smith told him he, Smith, was *paid by*

*defendant* to set the fire.  Considering this anticipated testimony, which clearly

inculpates defendant, the Court was not inclined to postpone defendant's trial.

Although defendant urges that Furr was essential for his case, in light of the entire

anticipated testimony, not merely that portion of the anticipated testimony wherein

Furr would testify that Smith stated that he set the fire, not defendant, the Court

refusal to further delay the trial was not prejudicial to defendant, particularly in light

of defendant's own testimony that he did not have anything to do with the arson,

and the cross-examination of Smith.

> **The Court improperly refused the admission of government's
> Grand Jury Exhibit No. 1, marked at trial as Defendant's Exhibit
> G, . . ., the summary by Agent David Diveley of a prior statement
> by witness Scott Smith...**

Defendant argues that the Court erred in refusing to admit the summary by

Agent Diveley of a statement by government witness, Smith.  Defendant argued for

admission pursuant to Rule 612 of the Federal Rules of Evidence at the time and

once again argues that the summary should have been admitted under Rule 612.

Rule 612 provides:

> **Rule 612.  Writing Used to Refresh Memory**
>
> Except as otherwise provided in criminal proceedings by
> section 3500 of title 18, United States Code, if a witness uses a writing
> to refresh memory for the purpose of testifying, either
>
> (1) while testifying, or

> (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,
>
>> an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness...

As the record reflects, the only reason the witness had to refer to this summary is because it was contained or mentioned in Grand Jury testimony, which the government was using for rehabilitation since counsel for defendants was raising an issue that Smith had lied about the truck in question being a burned truck as opposed to a flooded truck. The government was trying to show through the testimony to the Grand Jury that he had explained that he wanted that change made, and the government only referred to the two paragraphs which were involved in this change. The government did not refer to any other paragraphs which defendant sought to be admitted. The Court determined that the Exhibit was not used by Smith to refresh his memory, rather, it was solely used for the purpose articulated by the government. As such, the request for admission was denied. Defendant has not demonstrated that this ruling was in error.

Defendant also argues that the exhibit was admissible under Rule 613(b). This rule provides:

> **(b) Extrinsic evidence of prior inconsistent statement of witness.**
> Extrinsic evidence of a prior inconsistent statement by a witness is not

admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interest of justice otherwise require. . .

In assessing whether to allow an allegedly prior inconsistent statement, the Court must look not only to Rule 613(b), but must also determine whether that statement is material to the issues in the matter before it.

Although Federal Rule of Evidence 613(b) allows the introduction of extrinsic evidence of a witness's prior inconsistent statement in the circumstances present in this case, our case law adds a restriction not explicitly included in Rule 613 itself: Extrinsic evidence of a collateral matter is not admissible. *United States v. Grooms,* 978 F.2d 425, 428-29 (8th Cir.1992); *United States v. McCrady,* 774 F.2d 868, 873 (8th Cir.1985). Evidence that does not pertain "to the substantive issues of the trial" and that "could not be shown in evidence for any purpose independent of the contradiction" is collateral. *United States v. Roulette,* 75 F.3d 418, 423 (8th Cir.1996), *cert. denied,* 519 U.S. 853 (1996).

*U.S. v. Carter*, 410 F.3d 1017, 1022 -1023 (8th Cir. 2005).

Thus,

The relevant issue under Rule 613(b) is not whether there is some material issue that would be affected in some way by the admission of the prior inconsistent testimony, but rather whether the *precise subject* of the prior inconsistent testimony is material. *See Roulette,* 75 F.3d at 423 ("A prior inconsistent statement contains collateral matter and is therefore inadmissible if the facts referred to in the statement could not be shown in evidence for any purpose independent of the contradiction.").

*U.S. v. Bolzer,* 367 F.3d 1032, 1039 (8th Cir. 2004). (Emphasis in original).

> Under Rule 613(b), a party seeking to introduce a prior inconsistent statement must ordinarily confront the witness with the prior inconsistent statement and afford him or her an opportunity to explain or deny the inconsistency. *United States v. Roulette,* 75 F.3d 418, 423 (8th Cir.1996); *accord United States v. Schnapp,* 322 F.3d 564, 571 (8th Cir.2003) ( "[E]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless: (1) the witness is afforded an opportunity to explain or deny the statement and the opposing party is afforded an opportunity to interrogate the witness about the statement or (2) the interests of justice otherwise require."). *In addition, "under Rule 613(b) a witness may not be impeached on a collateral matter by use of extrinsic evidence of prior inconsistent statements. Contradiction of a witness by prior inconsistent statements may be shown only on a matter material to the substantive issues of the trial."* *Id.* (internal citations omitted).

*U.S. v. Buffalo*, 358 F.3d 519, 524 (8th Cir. 2004). (Emphasis added).

The statement defendant sought to introduce was clearly on a collateral matter, *i.e.*, the prior claims that defendant "burned" rather than flooded a 1998 truck. Because this statement, whether made or not, was not the *precise subject* of defendant's trial, the statement was not admissible.

Defendant also argues that the statement was admissible as a business record under Rule 803(6) of the Federal Rules of Evidence. Rule 803 provides:

> **(6) Records of Regularly Conducted Activity.--**A memorandum, report, record, or data compilation, in any form, of acts, events,

conditions, opinions, ro diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness...

The incorrectness of defendant's argument is readily apparent. Defendant is offering a document containing hearsay upon hearsay. While it may be that Rule 803(6) *could* allow hearsay upon hearsay to be admissible, defendant has failed to satisfy the requirement for the hearsay exception. In *U.S. v. Turner*, 189 F.3d 712 719 -720 (8th Cir. 1999), the Court of Appeals discussed situations in which hearsay upon hearsay may be admissible under the hearsay exception provided in Rule 803(6):

We first reject Turner and Kelly's argument that the time card and payroll evidence contained hearsay upon hearsay. The fact that a business document may contain entries in different forms or even from different sources does not necessarily imply that a hearsay upon hearsay problem exists. When a single business record contains different information recorded directly from multiple sources, or on multiple occasions, there may be several instances of hearsay, but there is only one layer of hearsay. For example, if one employee records his time on a time card each day and a supervisor signs the card prior to submitting it to the payroll department, the time card contains hearsay entries from both the employee and the supervisor, but only one layer of hearsay. On the other hand, when the source of information and the

> recorder of that information are not the same person, the business
> record contains hearsay upon hearsay. If both the source and recorder
> of the information were acting in the regular course of the
> organization's business, however, the hearsay upon hearsay problem
> may be excused by the business records exception to the rule against
> hearsay. *See Grogg v. Missouri Pac. R.R. Co.,* 841 F.2d 210, 213-14
> (8th Cir.1988);[2] Fed.R.Evid. 803(6).

*U.S. v. Turner*, 189 F.3d at 719 -720.  Smith's statement to Diveley was hearsay

upon hearsay and there was no showing that the source (Smith) was acting in the

regular course of business.

   Finally, defendant argues that the statement was admissible pursuant to 807,

the Residual Exception, which provides:

> A statement not specifically covered by Rule 803 or 804 but having
> equivalent circumstantial guarantees of trustworthiness, is not excluded
> by the hearsay rule, if the court determines that (A) the statement is
> offered as evidence of a material fact; (B) the statement is more

---

[2]    If both the source and recorder of the information contained in
Missouri Pacific's document were acting in the regular course of
Missouri Pacific's business, the multiple hearsay is excused by rule
803(6). *See United States v. Baker,* 693 F.2d 183, 188
(D.C.Cir.1982); *Clark v. City of Los Angeles,* 650 F.2d 1033, 1037
(9th Cir.1981), *cert. denied,* 456 U.S. 927, 102 S.Ct. 1974, 72
L.Ed.2d 443 (1982). If the source of the information, however, was
an outsider to the chain producing Missouri Pacific's business
record, rule 803(6) by itself does not permit admission of the
information provided by the outsider. *See Baker,* 693 F.2d at 188.
In this instance, "[t]he outsider"s statement must fall within another
hearsay exception to be admissible." *Id.*

*Grogg v. Missouri Pac. R.R. Co.*, 841 F.2d 210, 213-14 (8th Cir.1988)

probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interest of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Defendant cannot satisfy the requirements of this residual hearsay exception. The Smith statement is not material to this case. The statement sought to be offered is that Smith told Diveley that "he believes that in 2001 SPARKMAN burned a 1998 Dodge Diesel truck that was already flood damaged." This statement is not material to the case, rather it goes to prior acts of defendant having nothing to do with the current charges, other than the tendency to show past fraud claims filed by defendant. Furthermore, it fails to satisfy element (B); it is not more probative than Smith's live testimony that he told Diveley that defendant previously tried to flood the truck. Finally, the interest of justice would not be served by admission of the statement into evidence. Throughout the trial, defendant offered this exhibit solely for the purpose of attacking Smith's credibility. The specific portion offered is too vague ("[Smith] believes...") to controvert Smith's testimony that he told Diveley that defendant tried to flood the truck. Considering all factors required under Rule

807, the exclusion of this statement was proper.

> **The Court improperly excluded from evidence Defendants' [sic] trial Exhibit F...a summary by Agent David Diveley of the statements made by James Furr during his proffer. . .**

Defendant's argument that the summary of Furr's statements comes in as a business record under 803(6) is even less reliable than the Smith summary. Exhibit F consists of hearsay upon hearsay upon hearsay: Diveley's out of court summary, based on Furr's out of court statements, which were based on Smith's out of court statements to Furr. The Court's discussion of Rules 803(6), *supra* is further amplified by this "triple" hearsay.

Defendant's argument that the summary of Furr's statement to Diveley is admissible under Rule 803(6) is even less tenable than his argument regarding Smith's summary. Defendant is attempting to introduce an alleged prior inconsistent statement of Smith through hearsay statements Furr made to Diveley. There is absolutely nothing in the record to establish that Furr's rendition of what Smith told him was trustworthy and reliable. Smith was vigorously cross-examined. While the Court recognizes that it instructed the jury that questions of counsel are not evidence, the answers in response are indeed evidence. Those answers must be assessed in context with the propounded question, and the jury must make its

credibility determinations based on the answers to the questions posed.

Likewise, the Court's discussion of Rule 807 is applicable to defendant's argument that the summary of Furr's statements to Diveley is applicable. While the statements Furr made to Diveley admittedly involve material issues, the other requirements of Rule 807 are not met. Furr's statements are in no way more probative than Smith's testimony because there is not a scintilla of trustworthiness presented by the offer. Furthermore, the interests of justice would not be served by its admission because although the version of the facts is somewhat different, *i.e.*, the Furr summary states that Smith told Furr he (Smith) lit the fire, the fact remains that even in the Furr summary, defendant is the motivating cause of the fire; he asked Smith to burn the vehicle and building in order collect insurance proceeds.

Although not briefed, defendant makes several other arguments in his motion:

**The Court improperly allowed the government to offer proof of the financial dealings between defendant and Tom Wilson concerning the insurance proceeds which acts were not charged as crimes committed by defendant. . .**

Defendant argues that the purpose and use of this information was solely to engender pejudice against defendant and was not probative of any issue at trial. As the government articulated on the record when an objection to this testimony was

made, the government was offering the information to prove defendant's motive. No crime with regard to defendant and Wilson's financial dealings was presented nor was it implied. Rather, the government introduced the evidence to establish that because defendant was entitled to receive the insurance proceeds, he had a motive to burn the building. Defendant's objection notwithstanding, the Court allowed this testimony. That ruling was based on arguments presented at trial and defendant presents nothing new to establish that the testimony was offered for the reason he reiterates in his motion. Furthermore, the same reasoning applies to defendant's contention that he was not given notice of the government's intent to "inject these matters as additional criminal acts of wrongdoing." No criminal activity was even remotely implied by the government, rather, the information was introduced to show where the insurance proceeds would go. Nothing as sinister as defendant urges can be ascertained from the government's introduction of this testimony.

**Defendant was deprived of due process and a fair trial, and the right to present evidence when ATF Special Agent David Diveley followed government witness Tom Wilson, the defendant's business partner, into the hallway after his testimony and threatened him. . .**

For the very first time in this matter, defendant claims that Diveley followed Wilson out of the courtroom and threatened him in the hallway. Defendant has submitted affidavits from Wilson and an individual by the name of Gregory J.

Pleimann.  The Court is somewhat perplexed that this issue is surfaced at this point,

rather than immediately following the alleged incident.  That having been said, the

Court is likewise perplexed that defendant is arguing that this alleged incident

entitles him to a new trial.  Defendant claims Wilson was threatened after his

testimony, therefore, even *if* Diveley made statements to Wilson, the comments in

no way influenced Wilson's testimony.  Defendant contends that

> [t]he agent's actions were meant to harass and intimidate Wilson and
> other defense witnesses from testifying or in any way supporting the
> defense.  The move was calculated to and did deprive the defendant of
> his right to due process and a fair trial and his right to present a defense
> in violation of the Fifth and Sixth Amendments to the United States
> Constitution.  It also caused or contributed to cause defendant to be
> deprived of the effective assistance of counsel in his failure to call
> these witness.
>
> > (a) Counsel did not call Rodney Meyr, defendant's
> > accountant, who could testify to defendant's positive
> > financial outlook and rebut the government's contention
> > that defendant was motivated to commit these crimes
> > because he was in financial distress;
>
> > (b) Counsel did not recall Tom Wilson, defendant's
> > business partner, to rebut the government's claims that
> > defendant had cheated Tom Wilson, and that defendant
> > tried to improperly keep the insurance monies for himself.
> > Mr. Wilson, for obvious reasons, did not want to further
> > expose himself to an overreaching government
> > investigation, and further harassment and intimidation;
>
> > (c) Counsel did not call Mr. and Mrs..Robert Goehman,

who would have supported the defendant's defense. Smith had testified that he met with defendant on the night of the fire at 6:00 p.m. Mr. Goehman and his wife would have testified that they were with the defendant at his car lot in Gordonville to purchase a car at around 6:15 that evening; and

(d) Counsel did not call defeat's wife, Lisa Sparkman. Mrs. Sparkman's testimony would have established a time line for defendant's activities on the night in question and that the defendant was not in financial distress.

Defendant was tried in a Federal Court in the United States of America. The very essence of the American judicial system is the opportunity of an accused to receive a fair trial. This Court is extremely dismayed by defendant's argument that he was denied this essential right by arguing that "he would have" presented testimony but for these alleged threats to Wilson, by virtue of the fact that no mention of these threats *whatsoever* was made until the filing of this motion. This Court is <u>not</u> a "Star Chamber," nor was it unapproachable. Defendant was never foreclosed from addressing the Court with issues or argument throughout the entire trial. Defendant's rank speculation of what uncalled witnesses *would have said* but for these alleged threats by Diveley to Wilson, is worthy of no further discussion.

**The Court improperly admitted 404(b) evidence that he had filed false insurance claims in the past for the**

**reasons set out in defendant's motions in limine. . .**

Finally, defendant asserts that there was no evidence connecting or linking defendant to the uncharged event, nor was it admissible to prove intent since intent was not a contested issue. Defendant argues that he either set the fire or he did not. This statement is the precise reason why it was incumbent upon the government to establish defendant's intent--because he completely denied having set the fire, which logically would establish *lack of intent*. The government did not, as defendant argues, inject "prejudicial venom" into the trial. Quite the contrary. Because defendant denied setting the fire, the government was required to present evidence of motive and intent. The evidence in that regard was properly admitted to establish a prior act of fraudulent insurance claims. The Court's ruling on the motion in limine was proper.

## Conclusion

Defendant has woefully failed to satisfy the requirements of either Rule 29 or 33 which would entitle him to a judgment of acquittal or to a new trial. As such, his motion is denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's Motion For Judgment of

Acquittal N.O.V. or in the Alternative for New Trial, [Doc. No. 65], is denied.

Dated this 5th day of April, 2006.

_____

HENRY EDWARD AUTREY

UNITED STATES DISTRICT JUDGE